ANTHONY J. DeLUCA, ESQ.
Nevada Bar No. 006952
DELUCA & ASSOCIATES
5830 W. Flamingo Road
Suite 233
Las Vegas, Nevada 89103
(702) 252-4673

<u>E-FILED ON</u>

Attorney for Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) |
| | )    BK-S-10-10469-BAM |
| ARTHUR R BECK JR. | ) |
| JOYCE HAND-BECK | )    Chapter 13 |
| | )    Trustee: Kathleen Leavitt |
| | ) |
| | )    HEARING DATE: 12-02-2010 |
| Debtors. | )    HEARING TIME: 2:30 P.M. |
| | ) |

### MOTION ALLOWING DEBTOR
### T O SHORT-SELL REAL PROPERTY

COMES NOW, Debtor(s) Arthur R Beck, Jr. and Joyce Hand-Beck, by and through their

attorney of record, Anthony J. DeLuca, Esq, and requests that this Court allow a short-sale of the

property located at 2770 Chokecherry Avenue, Henderson, NV 89074 ("Subject Property")

### **STATEMENT OF FACTS**

1.      On January 13th, 2010 Debtors filed a voluntary petition under chapter 13,  Title 11 of

the United States Bankruptcy Code, with a provision in their chapter 13 plan to retain the Subject

Property.

2.      Debtors have had a change of intention and can no longer afford the payments to retain

the Subject Property.

3.      Debtors have received an offer for purchase of their property and seek this court's

permission to proceed with a short-sale of the subject property. (See offer for purchase attached

hereto as exhibit "1".

**Wherefore**, Debtor respectfully requests this court:

1.      Allow the short-sale of their property.

3.      Any further just and equitable relief this Court deems proper under the premises.


DATED this 29th day of October, 2010.


DELUCA & ASSOCIATES


/s/ Anthony J. Deluca

Anthony J. Deluca, Esq.
5830 W. Flamingo Rd., Ste. 233
Las Vegas, Nevada 89103
Attorney for Debtor

Exhibit "1"



## EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL, EXCHANGE OR LEASE BROKERAGE LISTING AGREEMENT

1. **EXCLUSIVE RIGHT TO SELL:** I/We, **Arthur Beck, Joyce Beck** ("Seller") hereby employs and grants **Realty One Group** ("Broker") the exclusive and irrevocable
(Company Name)
right, commencing on **08/31/2010**, and expiring on **03/02/2011**, to sell, lease or exchange the Real Property located in the City of **Henderson**, County of **Nevada**, APN # **177-12-811-032** commonly known as: **2770 Chokecherry Ave, Henderson NV** ("the Property").

2. **TERMS OF SALE:** The listing price shall be $ **210,000.00**, terms available:
Cash **X** CONV **X** FHA **X** Lease ___ VA **X** Lease Option ___
Owner Will Carry ___ Other ___
(Note: If the Property is offered for lease, then the term "Seller" used in this Agreement includes "Landlord" as applicable.)

3. **PROPERTY OFFERED FOR SALE:** The listing price noted above includes the Property and all improvements and fixtures permanently affixed and installed.
     a.   The following items of Personal Property are **included** in the above price and shall be conveyed unencumbered in escrow by a valid bill of sale: _____

_____
_____
_____

     b.   The following items of Personal Property are **excluded** from the above price and not included in the sale: _____

_____
_____

4. **MULTIPLE LISTING SERVICE (MLS):** Broker is a participant of THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR) Multiple Listing Service, and the listing information will be provided to the MLS to be published and disseminated to its Participants and Subscribers in accordance with its Rules and Regulations and Section 20 herein. Broker is authorized to cooperate with other real estate Brokers, and to report the sale, its price, terms and financing for the publication, dissemination information and use by authorized Association members, MLS Participants and Subscribers.

5. **TITLE INSURANCE:** Seller agrees to provide Buyer with a policy of title insurance in the amount of the selling price.

6. **COMPENSATION TO BROKER:** Compensation is solely a matter of negotiation between Broker and Seller and is not fixed, suggested, controlled or recommended by GLVAR, MLS or any other person not a party to this Agreement. Seller agrees to pay Broker as compensation for services **3.000** % of selling price of the Property or $ _____ amount. If leased, Seller agrees to pay Broker **n/a** % of the total rental agreed to be paid by lessee or $ **N/A**. Seller acknowledges that Broker will offer **3.000** % or $ _____ to the cooperating broker who is the procuring cause of the sale. If leased, Broker agrees to pay the cooperating broker **N/A** % or $ **N/A**. Seller acknowledges that offers of compensation are between brokers and are not negotiable between the Seller and Buyer. Seller will also pay $ **N/A** for **N/A**.

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.
SELLER(S) INITIALS: _____ / _____

Realty ONE Group, Inc 10750 W Charleston Blvd #180 Las Vegas, NV 89135
Crystal DeJesus
Phone: (702)826-1221     Fax: (702)405-3359
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
Arthur Beck

49  **Compensation shall be due:**
50      a.  if the Property is sold or leased by Broker, or through any other person including Seller, on the above
51  terms or any other price and terms acceptable to Seller during the above time period or any extension of said time
52  period;
53      b.  if the Property is transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of
54  Seller without the consent of Broker, during the time period or any extension of said time period;
55      c.  if within   __45__   calendar days of the final termination, including extensions, of this Agreement,
56  the Property is sold, conveyed, or otherwise transferred to anyone with whom the Broker has had negotiations or
57  to whom the Property was shown prior to the final termination. This section (c) shall not apply if Seller enters
58  into a valid Brokerage Listing Agreement with another licensed real estate Broker after the final termination of
59  this Exclusive Brokerage Listing Agreement.
60
61  In the event of an exchange, permission is hereby given to the Broker to represent such parties as Broker may
62  deem appropriate and collect compensation from them provided that there is full disclosure to all parties. If
63  completion of sale is prevented by default of Seller, or the refusal of Seller to accept an offer in accordance with
64  the price and terms of this Agreement, then upon event, Broker is authorized to take any action reasonably
65  necessary to collect said commission. If completion of sale is prevented by a party to the transaction other than
66  Seller, Broker may collect its commission only if and when Seller collects damages by suit or otherwise, and then
67  in an amount not less than one-half of the damages recovered, but not to exceed the above compensation after first
68  deducting title expenses, escrow expenses and the expenses of collections if any. Broker is authorized to
69  cooperate and divide with other brokers the above compensation in any manner acceptable to Broker. Seller
70  hereby irrevocably assigns to Broker the funds and proceeds of Seller in escrow equal to the above compensation.
71  In the event any sum of money due under this Agreement remains unpaid for a period of thirty (30) days, such
72  sum shall bear interest at the rate of (   __N/A__   ) percent per annum from the due date until paid.
73
74  **7.  DEPOSIT:** Broker is authorized to accept on Seller's behalf a deposit to be applied toward purchase price or
75  lease.
76
77  **8.  AGENCY RELATIONSHIP:**
78      a.  Broker warrants that he holds a current, valid Nevada real estate license. Broker shall act as the agent of
79  the Seller and may also assign or designate a licensee of the Broker who shall act as the representative of the
80  seller in any resulting transaction.
81      b.  Depending upon the circumstances, it may be necessary or appropriate for the designated licensee to
82  act as agent for both Seller and Buyer, exchange parties, or one or more additional parties. If applicable, Broker
83  and the designated licensee shall disclose to Seller any election to act as an agent representing more than one
84  party and obtain the written Consent To Act Form signed by all parties to the transaction.
85      c.  Broker may also have licensees in its company who are agents of the Buyer who may show and
86  negotiate an offer to purchase Seller's Property. In this event the licensees that represent the Buyer will only
87  represent the Buyer in the transaction with all duties owed to the Buyer and not the Seller. This, therefore, does
88  not require a Consent To Act Form.
89
90  **9.  REQUIRED DISCLOSURES:**
91      a.  Unless exempt under NRS chapter 113, Seller shall truthfully complete and sign a Seller's Real
92  Property Disclosure Statement concerning the condition of the Property. Seller shall update the Seller's Real
93  Property Disclosure as necessary.
94      b.  If the Property is or has been the subject of a construction defect claim, whether litigated or not, Seller
95  shall provide the disclosure required by NRS 40.688.
96      c.  If the Property was built prior to 1978, Seller shall complete the Disclosure of Information on Lead-
97  Based Paint Hazards in accordance with Federal Regulations.

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS: _____ / _____

Exclusive Right Listing Agreement Rev. 2007
Page 2 of 5

© 2007 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Arthur Beck

98        **d.**  Seller acknowledges receipt of the Residential Disclosure Guide:  [       ]   ]
99

100 **10. SELLER'S INDEMNIFICATION:** Seller agrees to save, defend, and hold Broker harmless from all claims,
101 disputes, litigation, and/or judgments arising from any incorrect information supplied by Seller or from any
102 material facts which Seller fails to disclose.
103

104 **11. FAIR HOUSING:** Broker shall offer the Property for sale or lease without regard to race, color, sex, creed,
105 religion, national origin, handicap, or familial status in compliance with federal, state, and local anti-
106 discrimination laws.
107

108 **12. COMMON INTEREST COMMUNITY:** If the Property is located within a Common Interest Community,
109 Seller acknowledges and agrees to obtain and/or provide the information required by NRS 116.4109 and
110 116.41095 to Broker for delivery to Buyer.
111

112 **13. SIGN:** Seller authorizes Broker to install a FOR SALE/LEASE sign on the Property.
113

114 **14. KEYBOX:** Seller[ ___ ] (does) [ **X** ] (does not) authorize Broker to install a keybox in connection with the
115 showing of the Property. Seller acknowledges that they have been advised that:
116       **a.**  The purpose and function of the keybox is to permit access to the interior of the Property by all
117 members of GLVAR's MLS, including certified/licensed appraisers;
118       **b.**  Seller should safeguard Personal Property and valuables located within the Property;
119       **c.**  It is not a requirement of the GLVAR's MLS for a Seller to allow the use of a keybox;
120       **d.**  Where a tenant occupies the Property, the tenant's consent is also required, which shall be obtained by
121 the Seller or his Property Manager;
122       **e.**  Neither the listing nor selling Broker nor the GLVAR is an insurer against the loss of Personal
123 Property. Seller hereby releases Broker and the GLVAR from any responsibility relating to the keybox.
124

125 **15. RENT/LEASE:** The Property _____ is -OR- **X** is not currently occupied by a Tenant. The Property is
126 subject to a management agreement with: (name of Property Manager and phone
127 number): **N/A** . If the Property is a single family unit, Seller agrees to not rent or lease
128 the Property during the term of this Agreement without fourteen (14) days prior written notice to Broker.
129

130 **16. TAX WITHHOLDING:** Seller agrees to perform any act reasonably necessary to carry out the provisions of
131 FIRPTA (Internal Revenue Code 1445).
132

133 **17. MEDIATION/ARBITRATION:** The Broker and Seller hereby agree that any dispute concerning the terms
134 and conditions of this contract shall be resolved through mediation and/or arbitration proceedings at the GLVAR
135 in accordance with the standards of practice of the National Association of REALTORS® and GLVAR's rules of
136 procedure. If a lawsuit is filed by either party, that lawsuit shall be stayed until the dispute is resolved or
137 terminated in accordance with this paragraph.
138

139 **18. ATTORNEY'S FEES:** In the event suit is brought by either party to enforce this Agreement, the prevailing
140 party is entitled to court costs and reasonable attorney's fees.
141

142 **19. ADVERTISING:** Seller acknowledges that a photo of the Property may be taken by an authorized
143 representative for publication in the MLS computer system. Seller agrees that the Property may be advertised in
144 all formats of media including but not limited to electronic and print advertising.
145

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**
**SELLER(S) INITIALS:** _____ / _____

Exclusive Right Listing Agreement Rev. 2007          © 2007 Greater Las Vegas Association of REALTORS®
Page 3 of 5

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      Arthur Beck

146 **20. USE OF LISTING CONTENT:** Seller acknowledges and agrees that all photographs, images, graphics,
147 video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other
148 copyrightable elements relating to the Property provided by to Broker or Broker's agent (the "Seller Listing
149 Content") and any changes thereto, may be filed with MLS, included in compilations of listings, and otherwise
150 distributed, publicly displayed and reproduced in any medium. Seller hereby grants to Broker a non-exclusive,
151 irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and
152 reproduce the Seller Listing Content, to prepare derivative works of the Seller Listing Content, and to distribute
153 the Seller Listing Content or any derivative works thereof in any medium. This non-exclusive license shall
154 survive the termination of this Agreement for any reason whatever. Seller represents and warrants to Broker that
155 the Seller Listing Content, and the license granted to Broker for the Seller Listing Content, do not violate or
156 infringe upon the rights, including any copyright rights, of any person or entity.
157

158 **21. NEVADA LAW:** This Agreement is executed and intended to be performed in the State of Nevada, and the
159 laws of Nevada shall govern its interpretation and effect. The parties agree that the State of Nevada, and the
160 county in which the Property is located, is the appropriate judicial forum for any litigation, arbitration or
161 mediation related to this Agreement.
162

163 **22. ENTIRE CONTRACT:** All prior negotiations and agreements between the parties are incorporated in this
164 Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final, complete, and
165 exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence
166 of any prior agreement or contemporaneous oral agreement. This Agreement and any supplement, addendum, or
167 modification, including any photocopy or facsimile, may be executed in two or more counterparts, all of which
168 shall constitute one and the same writing. The terms of this Agreement may not be amended, modified or altered
169 except through a written agreement signed by all of the parties hereto. **The parties agree that an MLS Change
170 Order signed by Broker and Seller shall act as a valid written addendum to this Agreement.**
171

172 **23. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held to be invalid or
173 unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any
174 respect whatsoever.
175

176 **24. WARRANTY OF OWNERSHIP:** Seller warrants that Seller is the sole Owner of the Property or has the
177 authority to execute this Agreement. By signing below Seller acknowledges that Seller has read and understands
178 this Agreement, agrees to the terms thereof, and has received a copy.
179

180 **25. ADDITIONAL TERMS:** _____
181 _____
182 _____
183 _____
184 _____
185 _____
186 _____
187 _____
188 _____
189 _____
190 _____
191 _____
192 _____
193 _____
194 _____

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS: _____ / _____

Exclusive Right Listing Agreement Rev. 2007          © 2007 Greater Las Vegas Association of REALTORS®
Page 4 of 5

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Arthur Beck

 **WHAT EVERYONE SHOULD KNOW ABOUT EQUAL OPPORTUNITY IN HOUSING** 

The sale and purchase of a home is one of the most significant events that every person will experience in their lifetime. It is more than the simple purchase of housing, for it includes the hopes, dreams, aspirations, and economic destiny of those involved.

### THE LAW - Civil Rights Act of 1866

The Civil Rights Act of 1866 prohibits all racial discrimination in the sale or rental of property.

### Fair Housing Act

The Fair Housing Act declares a national policy of fair housing throughout the United States. The law makes illegal any discrimination in the sale, lease or rental of housing, or making housing otherwise unavailable, because of race, color, religion, sex, handicap, familial status, or national origin.

### Americans with Disabilities Act

Title III of the Americans with Disabilities Act prohibits discrimination against the disabled in places of public accommodations and commercial facilities.

### Equal Credit Opportunity Act

The Equal Credit Opportunity Act makes discrimination unlawful with respect to any aspect of a credit application on the basis of race, color, religion, national origin, sex, marital status, age or because all or part of the applicant's income derives from any public assistance program.

### State and Local Laws

State and Local laws often provide broader coverage and prohibit discrimination based on additional classes not covered by federal law.

### THE RESPONSIBILITIES

The home seller, the home seeker, and the real estate professional all have rights and responsibilities under the law.

### For the Home Seller

You should know that as a home seller or landlord you have a responsibility and a requirement under the law not to discriminate in the sale, rental and financing of property on the basis of race, color, religion, sex, handicap, familial status, or national origin. You cannot instruct the licensed broker or salesperson acting as your agent to convey for you any limitations in the sale or rental, because the real estate professional is also bound by law not to discriminate. Under the law, a home seller or landlord cannot establish discriminatory terms or conditions in the purchase or rental, deny that housing is available or advertise that the property is available only to persons of a certain race, color, religion, sex, handicap, familial status, or national origin.

### For the Home Seeker

You have the right to expect that housing will be available to you without discrimination or other limitation based on race, color, religion, sex, handicap, familial status, or national origin.

This includes the right to expect:

- housing in your price range made available to you without discrimination
- equal professional service
- the opportunity to consider a broad range of housing choices
- no discriminatory limitations on communities or locations of housing
- no discrimination in the financing, appraising or insuring of housing
- reasonable accommodations in rules, practices and procedures for persons with disabilities
- non-discriminatory terms and conditions for the sale, rental, financing, or insuring of a dwelling
- to be free from harassment or intimidation for exercising your fair housing rights.



**Seller(s) Initials**

### For the Real Estate Professional

As a home seller or home seeker, you should know that the term REALTOR® identifies a licensed professional in real estate who is a member of the NATIONAL ASSOCIATION OF REALTORS®. Not all licensed real estate brokers and salespersons are members of the National Association, and only those who are can identify themselves as REALTORS®. They conduct their business and activities in accordance with a strict Code of Ethics. As agents in a real estate transaction, licensed brokers or salespersons are prohibited by law from discriminating on the basis of race, color, religion, sex, handicap, familial status, or national origin. A request from the home seller or landlord to act in a discriminatory manner in the sale, lease or rental cannot legally be fulfilled by the real estate professional.

### DEED AND PROPERTY COVENANTS OR RESTRICTIONS OF RECORD

During the history of our country, some persons have placed restrictions on property based on race, color, religion, sex, handicap, familial status, or national origin. Generally, these restrictions are void and unenforceable, with limited exceptions for particular types of religious housing and housing for older persons. The publication of these void restrictions may convey a message that the restrictions continue to be valid. Any time a sales associate or broker is asked to provide a copy of the covenants or restrictions of record relating to the use of a property the following message should be included:

*These documents may contain restrictions or covenants based on race, color, religion, sex, handicap, familial status, or national origin.*

*Such restrictions or covenants generally are void and unenforceable as violations of fair housing laws.*

*Be assured that all property is marketed and made available without discrimination based on race, color, religion, sex, handicap, familial status, or national origin. Should you have any questions regarding such restrictions, please contact your attorney.*

### THE EQUAL OPPORTUNITY PROGRAM

The NATIONAL ASSOCIATION OF REALTORS® has developed a Fair Housing Program to provide resources and guidance to REALTORS® in ensuring equal professional services for all people.

### The Code of Ethics

Article 10 of the NATIONAL ASSOCIATION OF REALTORS® Code of Ethics requires that "REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, handicap, familial status, or national origin. REALTORS® shall not be a party to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, handicap, familial status, or national origin."

A REALTOR® pledges to conduct business in keeping with the spirit and letter of the Code of Ethics. Article 10 imposes obligations upon REALTORS® and is also a firm statement of support for equal opportunity in housing.

### Fair Housing Partnership

The Fair Housing Partnership negotiated with the U.S. Department of Housing and Urban Development (HUD) outlines a program of voluntary compliance. REALTORS® voluntarily participate in activities and program to acquaint the community with the availability of equal housing opportunity, to establish office procedures to ensure that there is no denial of equal professional service, to make materials available which will explain this commitment, and to work with other groups within the community to identify and remove barriers to fair housing.

### FURTHER ASSISTANCE

Local Boards of REALTORS® will accept complaints alleging violations of the Code of Ethics filed by a homeseeker who alleges discriminatory treatment in the availability, purchase or rental of housing. Local Boards of REALTORS® have a responsibility to enforce the Code of Ethics through professional standards procedures and corrective action in cases where a violation of the Code of Ethics is proven to have occurred.

Complaints alleging discrimination in housing may be filed with the nearest office of the Department of Housing and Urban Development (HUD), or by calling HUD's Discrimination Hotline at 1-800-669-9777, 1-800-290-1617 (TTY). For information and publications on fair housing, call HUD's Fair Housing Information Clearinghouse at 1-800-343-3442.

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Arthur Beck

## ADDENDUM TO LISTING AGREEMENT -- SELLER OPT OUTS 

This Addendum is hereby made a part of the Listing Agreement between **Arthur Beck, Joyce Beck**
_____ as Seller and **Realty One Group**
_____ as Broker, dated **August 31, 2010** _____ regarding the real property at **2770**
**Chokecherry Ave, Henderson NV , Henderson, NV   89074** ("the Property").

1.    Seller understands and acknowledges that Broker will submit the Property's listing information to the Multiple Listing Service (MLS) in which Broker participates, unless Seller instructs Broker to exclude the listing.

2.    Seller further understands and acknowledges that MLS will disseminate the Property's listing information to those MLS brokers and agents (and/or their web vendors) who operate Internet sites, as well as online providers such as realtor.com and lasvegasrealtor.com, and that such sites are generally available to the public. Some, but not all, of these websites may include a commentary section where consumers may include reviews and comments about the Property in immediate conjunction with the listing (blogging), or provide a link to the comments. In addition, some, but not all, of these websites may display an automated estimate of the market value of the Property in immediate conjunction with the listing, or provide a link to the estimate.

3.    Seller may opt-out of any of the following by initialing the appropriate space(s) below:

a. _____ _____ I/we have advised the Broker or sales agent that I/we DO NOT want the listed Property to be displayed on the Internet (the listing will not appear on any Internet site).

b. _____ _____ I/we have advised the Broker or sales agent that I/we DO NOT want the address of the listed Property to be displayed on the Internet (listing information will be disseminated via Internet, but the Property address will not appear in conjunction with the listing).

c. _____ _____ I/we have advised the Broker or sales agent that I/we DO NOT want a commentary section displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller).

d. _____ _____ I/we have advised the Broker or sales agent that I/we DO NOT want an automated estimate of value displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller).

—OR—

_____ _____ Seller does NOT opt out of any of the above.

4.    Seller understands and acknowledges that if option (a) above is selected, consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their search.

**SELLER:**
Seller's Signature _____       Seller's Signature _Joyce Beck_
Printed Name: **Arthur Beck**                      Printed Name: **Joyce Beck**
Date: _9-12-10_                                     Date: _____
                          Time: _____           Time: _____
**BROKER:**
Designated Licensee Signature _____      Date: _9-12-10_
Printed Name: **Crystal Lone**

Broker's Signature _____        Date: _____
Printed Name: **Dave Tina**

Reminder to Broker/Agent: If Seller has selected either (a) or (b), a copy of this form MUST be provided
to the MLS within 48 hours per MLS Rule 21.25. Fax to (702) 732-3154.

Addendum to Listing Agreement (Seller Opt Out)

Realty ONE Group, Inc 10750 W Charleston Blvd #180 Las Vegas, NV 89135        © 2008 Greater Las Vegas Association of REALTORS®
Phone: (702)898-1221        Fax:   (702)405-3359        Crystal DeJesus

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Arthur Beck



# RESIDENTIAL PURCHASE AGREEMENT

### (Joint Escrow Instructions and Earnest Money Receipt)

1
2
3                                                    Date: __September 17, 2010__
4
5                       __Sukhbir Panon__              ("Buyer"), hereby offers to purchase
6      __2770 Chokecherry Ave, Henderson, Nev 89074__                    ("Property"),
7   within the city or unincorporated area of _____Henderson_____ , County of _____Clark_____ ,
8   State of Nevada, A.P.N. # __177-12-811-032__      for the purchase price of $ __175,000.00__ ,
9   (_____One Hundred Seventy-Five Thousand_____ dollars) ("Purchase Price") on the terms
10  and conditions contained herein:
11  BUYER ☒ does -OR- ☐ does not intend to occupy the Property as a residence.
12

## Buyer's Offer

13
14  1.    **FINANCIAL TERMS & CONDITIONS:**
15  $ __2,000.00__ A. **EARNEST MONEY DEPOSIT ("EMD")** is ☐ presented with this offer -OR- ☒ __will wire to__
16          __sellers choice within 24 hours of acceptance.__
17          *(NOTE: It is a felony in the State of Nevada punishable by up to four years in prison and a $5,000 fine to write a*
18          *check for which there are insufficient funds. NRS 193.130(2)(d).)*
19
20  $ ____N/A____ B. **ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____ . The
21          additional deposit ☐ will -OR- ☐ will not be considered part of the EMD. (Any conditions on the additional
22          deposit should be set forth in Section 28 herein.)
23
24  $ ____N/A____ C. **THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A NEW LOAN** ON
25          THE FOLLOWING TERMS AND CONDITIONS:
26          ☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____
27          Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
28          exceed _____ %. Initial monthly payment not to exceed $ _____ , not including taxes, insurance
29          and/or PMI or MIP.
30
31  $ ____N/A____ D. **THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE**
32          **FOLLOWING EXISTING LOAN(S):**
33          ☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____
34          Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years. Initial rate of interest not to
35          exceed _____ %. Monthly payment not to exceed $ _____ , not including taxes, insurance and/or PMI or MIP.
36
37  $ ____N/A____ E. **BUYER TO EXECUTE A PROMISSORY NOTE SECURED BY DEED OF TRUST** PER TERMS
38          IN "FINANCING ADDENDUM."
39
40  $ __173,000.00__ F. **BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in cash or certified funds to be paid
41          at Close of Escrow ("COE").
42
43  $ __175,000.00__ G. **TOTAL PURCHASE PRICE.** (This price DOES NOT include closing costs, prorations, or other fees
44          and costs associated with the purchase of the Property as defined herein.)
45

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ __Sukhbir Panon__ _____  BUYER(S) INITIALS: _____
Property Address: _____ __2770 Chokecherry Ave__ _____
                         __Henderson, Nev  89074__          SELLER(S) INITIALS: _____

Rev. 6/09                    ©2009 Greater Las Vegas Association of REALTORS®

Horizon Realty Group 7261 Prairie Falcon Rd Ste 110 Las Vegas, NV 89128                                  Phone: (702)466-4995     Fax: (702)466-5331     Page 1 of 11
Prative Apelion
Produced with ZipForm by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com                            Sukhbir Panou

2. **ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

A. **NEW LOAN APPLICATION:** Within ___N/A___ business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice; (2) authorize ordering of the appraisal (per lender's requirements); and (3) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer

☐ does -OR- ☐ does not

authorize lender to provide loan status updates to Seller's and Buyer's Brokers, as well as Escrow Officer. Buyer agrees to use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

B. **CASH PURCHASE:** Within ___1___ business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

C. **APPRAISAL:** If an appraisal is required as part of this agreement, or requested by Buyer, and if the appraisal is less than the Purchase Price, the transaction will go forward if (1) Buyer, at Buyer's option, elects to pay the difference and purchase the Property for the Purchase Price, or (2) Seller, at Seller's option, elects to adjust the Purchase Price accordingly, such that the Purchase Price is equal to the appraisal. If neither option (1) or (2) is elected, then Parties may renegotiate; if renegotiation is unsuccessful, then either Party may cancel this Agreement upon written notice, in which event the EMD shall be returned to Buyer.

3. **SALE OF OTHER PROPERTY:**

A. This Agreement
☒ is not -OR-
☐ is contingent upon the sale (and closing) of another property which address is
_____
_____

B. Said Property
☐ is currently listed
☐ is not -OR- ☐ is
presently in escrow with _____
Escrow Number: _____ Proposed Closing Date: _____

When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer a written notice of that fact. Within three (3) days of receipt of the notice, Buyer will waive the contingency of the sale and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.

4. **FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(E) of this Agreement, all items are transferred in an "AS IS" condition.

A. All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s), window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(s), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

B. The following additional items of personal property: ___N/A___

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: ___Sukhbir Pannu___                           BUYER(S) INITIALS: _____
                   2770 Chokecherry Ave
Property Address: ___Henderson, Nev  89074___               SELLER(S) INITIALS: _____
Rev. 6/09          ©2009 Greater Las Vegas Association of REALTORS®

**5. ESCROW:**

A. **OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after execution of this Agreement ("Opening of Escrow"), at _____ **Title Company** _____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____ **N/A** _____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement and receipt of the EMD (if applicable). ESCROW HOLDER is instructed to notify the Parties (through their respective Brokers) of the opening date and the Escrow Number.

B. **EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited per the Earnest Money Receipt Notice and Instructions contained herein

C. **CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on (date) _____ **December 17, 2010** _____. If the designated date falls on a weekend or holiday, COE shall be the next business day.

D. **IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation which became effective January 1, 1987, that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

E. **FIRPTA:** If applicable, Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required. (See 26 USC Section 1445).

**6. TITLE INSURANCE:** Upon COE, Buyer will be provided with the following type of title insurance policy: ☐ CLTA; ☒ ALTA-Residential; -OR- ☐ ALTA-Extended (including a survey, if required).

**7. PRORATIONS, FEES AND EXPENSES** (Check appropriate box):

A. **TITLE AND ESCROW FEES:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | N/A |
|---|---|---|---|---|
| Escrow Fees | ☐ | ☐ | ☒ | ☐ |
| Lender's Title Policy | ☐ | ☐ | ☐ | ☒ |
| Owner's Title Policy | ☒ | ☐ | ☐ | ☐ |
| Real Property Transfer Tax | ☒ | ☐ | ☐ | ☐ |
| Other: _____ | ☐ | ☐ | ☐ | ☒ |

B. **PRORATIONS:**

| TYPE | PAID BY SELLER | PRORATE | N/A |
|---|---|---|---|
| CIC (Common Interest Community) Assessments | ☐ | ☒ | ☐ |
| CIC Periodic Fees | ☐ | ☒ | ☐ |
| SIDs / LIDs / Bonds / Assessments | ☐ | ☐ | ☒ |
| Sewer Use Fees | ☐ | ☒ | ☐ |
| Real Property Taxes | ☐ | ☒ | ☐ |
| Other: _____ | ☐ | ☐ | ☒ |

All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplementals or adjustments that occur after COE will be handled by the parties outside of Escrow.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ **Sukhdir Panna** _____ BUYER(S) INITIALS: _____

Property Address: _____ **2770 Chokecherry Ave** _____
_____ **Henderson, Nev 89074** _____ SELLER(S) INITIALS: _____

Rev. 6/09

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Sukhdir Panna

**C. INSPECTIONS AND RELATED EXPENSES (See also Section 12):**

Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water) are turned on and supplied to the Property within two (2) business days after execution of this Agreement, to remain on until COE. (It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.)

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| Appraisal | | ☑ | | |
| CIC Capital Contribution | | ☑ | | |
| CIC Transfer Fees | ☑ | | | |
| CLUE Report ordered by Seller | | | | ☑ |
| Fungal Contaminant Inspection | | | | ☑ |
| Home Inspection | | | | ☑ |
| Mechanical Inspection | | | ☑ | |
| Oil Tank Inspection | | | | ☑ |
| Pool/Spa Inspection | | | | ☑ |
| Roof Inspection | | | | ☑ |
| Septic Inspection (requires pumping) | | | | ☑ |
| Septic Lid Removal | | | | ☑ |
| Septic Pumping | | | | ☑ |
| Soils Inspection | | | | ☑ |
| Structural Inspection | | | | ☑ |
| Survey _____ (type) | | | | ☑ |
| Termite/Pest Inspection | | | | ☑ |
| Well Inspection (Quantity) | | | | ☑ |
| Well Inspection (Quality) | | | | ☑ |
| Wood-Burning Device/Chimney Inspection (includes cleaning) | ☐ | ☐ | | ☑ |
| Other: _____ | | | | ☑ |
| Re-Inspections | | | | ☑ |

If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law.

**D. CERTIFICATIONS:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| Fungal Contaminant | | | | ☑ |
| Roof | | | | ☑ |
| Septic | | | | ☑ |
| Well | | | | ☑ |
| Wood-Burning Device/Chimney Certification | ☐ | | | ☑ |
| Other: _____ | | | | ☑ |

The foregoing expenses for inspections and certifications will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty. Notwithstanding the above elections, in the event an inspection reveals problems with any of the foregoing, Buyer reserves the right to require a certification.

**E. SELLER'S ADDITIONAL COSTS AND LIMIT OF LIABILITY:** Seller agrees to pay a maximum amount of $ **N/A** _____ to correct defects and/or requirements disclosed by inspection reports, appraisals, and/or certifications. It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves the right to request additional repairs based upon the Seller's Real Property Disclosure. Items of a general maintenance or

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **Sukhbir Pannu**

Property Address: **2770 Chokecherry Ave**
**Henderson, Nev 89074**

Rev. 6/09

BUYER(S) INITIALS: _____

SELLER(S) INITIALS: _____

©2009 Greater Las Vegas Association of REALTORS®
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Page 4 of 11

Sukhbir Pannu

1 cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance and which
2 are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this section.
3 The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the
4 Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one
5 party.
6
7 **F.  LENDER'S FEES:** In addition to Seller's expenses above, Seller will contribute $ **N/A** _____
8 to Buyer's Lender's Fees and Buyer's Title and Escrow Fees ☐ including -OR- ☐ excluding costs which Seller must pay
9 pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have different appraisal and
10 financing requirements, which will affect the parties' rights and costs under this Agreement.
11
12 **G.  HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
13 Protection Plans that provide coverage to Buyer after COB. Buyer ☐ waives -OR- ☒ requires a Home Protection Plan with
14 **Alliance Home Warranty**                               ☒ Seller -OR- ☐ Buyer will pay for the Home Protection
15 Plan at a price not to exceed $ **350.00** _____. Buyer will order the Home Protection Plan. Neither Seller nor Brokers make
16 any representation as to the extent of coverage or deductibles of such plans. ESCROW HOLDER is not responsible for
17 ordering the Home Protection Plan.
18
19 **H.  OTHER FEES:** Buyer will also pay $ **300.00** _____ to Buyer's Broker for **Broker Fee** .
20
21 **8.  TRANSFER OF TITLE:** Upon COB, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
22 tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
23 (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
24 utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COB. Buyer is advised the
25 Property may be reassessed after COE which may result in a real property tax increase or decrease.
26
27 **9.  COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
28 Seller or his authorized agent shall request the CIC documents and certificate listed in NRS 116.4109 (collectively, the "resale
29 package") within two (2) business days of Acceptance and provide the same to Buyer within one (1) business day of Seller's
30 receipt thereof. Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the
31 date of receipt of the resale package. If Buyer does not receive the resale package within fifteen (15) calendar days of
32 Acceptance, this Agreement may be cancelled in full by Buyer without penalty. If Buyer elects to cancel this Agreement
33 pursuant to this section, he must deliver, via hand delivery or prepaid U.S. mail, a written notice of cancellation to Seller or his
34 authorized agent identified in the Confirmation of Representation at the end of this Agreement. Upon such written cancellation,
35 Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW
36 HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package
37 will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COB.
38
39 **10.  DISCLOSURES:** Within five (5) calendar days of Acceptance of this Agreement, Seller will provide the
40 following Disclosures and/or documents (each of which is incorporated herein by this reference). Check applicable boxes.
41 ☐ Construction Defect Claims Disclosure, if Seller has marked "Yes" to Paragraph 1(d) of the
42    Seller Real Property Disclosure Form (NRS 40.688)
43 ☐ Fungal (Mold) Notice Form (not required by Nevada law)
44 ☐ Lead-Based Paint Disclosure and Acknowledgment, required if constructed before 1978 (24 CFR 745.113)
45 ☐ Methamphetamine Lab Disclosure, if applicable (NRS 40.770, NRS 489.776)
46 ☐ Pest Notice Form (not required by Nevada law)
47 ☐ Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer
48 ☐ Rangeland Disclosure (NRS 113.065)
49 ☒ Seller Real Property Disclosure Form (NRS 113.130)
50 ☐ Other (list) _____
51

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ **Sukhbir Pannu** _____         BUYER(S) INITIALS: _____

Property Address: _____ **2770 Chokecherry Ave** _____
_____ **Henderson, New  89074** _____          SELLER(S) INITIALS: _____

Rev. 6/09

©2009 Greater Las Vegas Association of REALTORS®

Produced with ZipForm™ by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Page 5 of 11

Sukhbir Pannu

Sep 21 10:08a 530p1046990Darr... RECO... Doc 46    Entered 10/29/10 21:30:01... Page 15 of 22...

Sep-21-2010 (TUE) 10:14

**11. ADDITIONAL DISCLOSURES:**

    **A.**  **LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NAC 645.640,
__N/A_____ is a licensed real estate agent in the State(s) of _____N/A_____, and has the following interest, direct or indirect, in this transaction: ☐ Principal (Seller or Buyer) -OR-☐ family relationship or business interest: __N/A__

    **B.**  In addition, for **NEW CONSTRUCTION**, to the extent applicable, Seller will provide: Public Offering Statement (NRS 116.4108); Electric Transmission Lines (NRS 119.1835); Public Services and Utilities (NRS 119.183); Initial Purchaser Disclosure (NRS 113); Construction Recovery Fund (NRS 624); Gaming Corridors (NRS 113.070); Water/Sewage (NRS 113.060); Impact Fees (NRS 278B.320); Surrounding Zoning Disclosure (NRS 113.070); FTC Insulation Disclosure (16 CFR 460.16); and Other: __N/A__

    **C.**  **AIRPORT NOISE:** Buyer hereby acknowledges the proximity of various overflight patterns, airports (municipal, international, military and/or private) and helipads. Buyer also fully understands that existing and future noise levels at this location, associated with existing and future airport operations, may affect the livability, value and suitability of the Property for residential use. Buyer also understands that these airports have been at their present location for many years, and that future demand and airport operations may increase significantly. For further information, contact your local department of aviation or the Federal Aviation Administration.

    **D.**  **FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, ancestry, handicap or familial status and any other current requirements of federal or state fair housing law.

    **E.**  In addition, Buyer acknowledges receipt of:
        • Residential Disclosure Guide (NRS 645.194)
        • Consent to Act, if applicable (NRS 645.252)
        • Duties Owed by a Nevada Real Estate Licensee (if one party is unrepresented) (NRS 645.252)
        • For Your Protection - Get Home Inspection (HUD 92564-CN) For FHA Loans

**12. BUYER'S DUE DILIGENCE:**

    **A.**  **DUE DILIGENCE PERIOD:** Buyer shall have _____7_____ calendar days from Acceptance to complete Buyer's Due Diligence. Buyer shall ensure that all inspections and certifications are initiated in a timely manner as to complete the Due Diligence in the time outlined herein. (If utilities are not supplied by the deadline referenced herein or if the disclosures are not delivered to Buyer by the deadline referenced herein, then Buyer's Due Diligence Period will be extended by the same number of calendar days that Seller delayed supplying the utilities or delivering the disclosures, whichever is longer.) During this period Buyer shall have the exclusive right at Buyer's discretion to cancel this Agreement. In the event of such cancellation, unless otherwise agreed herein, the EMD will be refunded to Buyer. If Buyer provides Seller with notice of objections, the Due Diligence Period will be extended by the same number of calendar days that it takes Seller to respond in writing to Buyer's objections. If Buyer fails to cancel this Agreement within the Due Diligence Period (as it may be extended), Buyer will be deemed to have waived the right to cancel under this section.

    **B.**  **PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to have non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: ____Sukhbir Pannu____
            2770 Chokecherry Ave
Property Address: ____Henderson, Nev 89074____

BUYER(S) INITIALS: _____

SELLER(S) INITIALS: _____

1    adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection;
2    other governmental services; existing and proposed transportation; construction and development; noise or odor from any
3    source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report,
4    Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone
5    number of the inspector.
6
7    **C.    PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company
8    shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
9    business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be
10   deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
11   days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such
12   exception removed or to correct each such other matter as aforesaid, Buyer shall have the option to: (a) terminate this
13   Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title
14   to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted
15   Exceptions."
16
17   **13.    WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of
18   the Property within _____3_____ calendar days prior to COE to ensure the Property and all major systems, appliances,
19   heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure
20   Statement, and that the Property and improvements are in the same general condition as when this Agreement was signed by
21   Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on. If any
22   systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right
23   to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or
24   power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have
25   been completed as agreed, and (c) Seller has complied with Seller's other obligations. If Buyer elects not to conduct a walk-
26   through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer
27   releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection,
28   except as otherwise provided by law.
29
30   **14.    DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, parking permits
31   (if freely transferable), gate transponders and garage door openers/controls outside of Escrow, upon COE. Seller agrees to
32   vacate the Property and leave the Property in a neat and orderly, broom-clean condition and render possession no later than
33   ☒ COE -OR- ☐ _____ . In the event Seller does not vacate the Property by this time, Seller shall be
34   considered a trespasser and shall be liable to Buyer for the sum of $ _____ per calendar day in addition to
35   Buyer's legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be
36   considered abandoned by Seller.
37
38   **15.    RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any
39   material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and
40   Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift
41   to Buyer.
42
43   **16.    ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable by
44   Buyer.
45
46   **17.    CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the
47   terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any
48   expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction
49   (unless otherwise provided herein).
50
51   **18.    DEFAULT:**
52       **A.    MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the
53   parties agree to engage in mediation, a dispute resolution process, through GLVAR. Not withstanding the foregoing,
54   in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply.
55

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

| | |
|---|---|
| Buyer's Name: _____Sukhbir Pannu_____ | BUYER(S) INITIALS: _____ |
| Property Address: 2770 Chokecherry Ave Henderson, Nev 89074 | SELLER(S) INITIALS: _____ |
| Rev. 6/09 | Page 7 of 11 |

©2009 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Sukhbir Pannu

1  **B.   IF BUYER DEFAULTS:** If Buyer defaults in performance under this Agreement, Seller shall have one of
2  the following legal recourses against Buyer (check one only):

3  ☒  As Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties
4  agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate
5  of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional
6  deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW
7  HOLDER to Buyer.

8                                              *-OR-*

9  ☐  Seller shall have the right to recover from Buyer all of Seller's actual damages that Seller may suffer as a result of
10  Buyer's default including, but not limited to, commissions due, expenses incurred until the Property is sold to a
11  third party and the difference in the sales price.

12
13  **C.   IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal
14  and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual
15  damages incurred by Buyer due to Seller's default.
16

## Instructions to Escrow

17  **19.   ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy,
18  Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except
19  losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are
20  made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is
21  entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such
22  documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their
23  several claims and rights among themselves. Upon the entry of an order authorizing such interpleader, ESCROW HOLDER
24  shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall
25  not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor
26  as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with
27  any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein.
28  ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents
29  received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event
30  an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise
31  compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur
32  in said action, shall be the responsibility of the parties hereto.
33
34  **20.   UNCLAIMED FUNDS:** In the event that funds from this transaction remain in an account, held by ESCROW
35  HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada
36  Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge
37  shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation.
38  ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the
39  funds are held by ESCROW HOLDER.
40

## Brokers

41  **21.   BROKER FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay
42  Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum or
43  percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing
44  and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if
45  Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal
46  recourse against Seller for any commission due.
47
48  **22.   WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers
49  or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  _____Sukhbir Pannu_____            BUYER(S) INITIALS: _____

Property Address:  2770 Chokecherry Ave
                   Henderson, Nev  89074            SELLER(S) INITIALS: _____

Rev. 6/09          ©2009 Greater Las Vegas Association of REALTORS®            Page 8 of 11

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Sukhbir Pannu

1  or warranties, unless expressly stated herein. Buyer agrees to satisfy himself, as to the condition of the Property, prior to COE.
2  Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to
3  make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims
4  against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c)
5  environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's
6  proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to
7  Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to
8  conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is
9  limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.
10

## Other Matters

11  **23.  DEFINITIONS:** "Acceptance" means the date that both parties have consented to and received a final, binding
12  contract by affixing their signatures to this Agreement and all counteroffers. "Agent" means a licensee working under a Broker
13  or licensees working under a developer. "Agreement" includes this document as well as all accepted counteroffers and
14  addenda. "Bona Fide" means genuine. "Buyer" means one or more individuals or the entity that intends to purchase the
15  Property. "Broker" means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real
16  estate agents associated therewith). "Business Day" excludes Saturdays, Sundays, and legal holidays. "Calendar Day" means
17  a calendar day from/to midnight unless otherwise specified. "CFR" means the Code of Federal Regulations. "CIC" means
18  Common Interest Community (formerly known as "HOA" or homeowners associations). "CIC Capital Contribution" means
19  a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. "CIC Transfer Fees"
20  means the administrative service fee charged by a CIC to transfer ownership records. "CLUE" means Comprehensive Loss
21  Underwriting Exchange. "Close of Escrow (COE)" means the time of recordation of the deed in Buyer's name. "Default"
22  means the failure of a Party to observe or perform any of its material obligations under this Agreement. "Delivered" means
23  personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or
24  mailed by regular mail. "Down Payment" is the Purchase Price less loan amount(s). "EMD" means Buyer's earnest money
25  deposit. "Escrow Holder" means the neutral party that will handle the escrow. "FHA" is the U.S. Federal Housing
26  Administration. "GLVAR" means the Greater Las Vegas Association of REALTORS®. "IRC" means the Internal Revenue
27  Code (tax code). "LID" means Limited Improvement District. "N/A" means not applicable. "NAC" means Nevada
28  Administrative Code. "NRS" means Nevada Revised Statues as Amended. "Party" or "Parties" means Buyer and Seller.
29  "PITI" means principal, interest, taxes, and hazard insurance. "PMI" means private mortgage insurance. "PST" means
30  Pacific Standard Time, and includes daylight savings time if in effect on the date specified. "PTR" means Preliminary Title
31  Report. "Property" means the real property and any personal property included in the sale as provided herein. "Receipt"
32  means delivery to the party or the party's agent. "Seller" means one or more individuals or the entity that is the owner of the
33  Property. "SID" means Special Improvement District. "Title Company" means the company that will provide title insurance.
34  "USC" is the United States Code. "VA" is the Veterans Administration.
35

36  **24.  DELIVERY, FACSIMILE, COPIES AND NOTICES:**
37      A.    Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for
38  Seller or Buyer if represented. This Agreement may be signed by the parties on more than one copy, which, when taken
39  together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.
40
41      B.    Except as otherwise provided in Section 9, when a Party wishes to provide notice as required in this
42  Agreement, such notice shall be sent regular mail, personal delivery, by facsimile, overnight delivery and/or by email to the
43  Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read
44  receipt confirmed in the case of email. Any cancellation notice shall be contemporaneously faxed to Escrow.
45
46  **25.  IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
47  electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
48  to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
49
50  **26.  OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement
51  shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This
52  Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and
53  intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties
54  agree that the county and state in which the Property is located is the appropriate forum for any action relating to this

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  ___Sukhbir Pannu___                              BUYER(S) INITIALS: _____

                    2770 Chokecherry Ave
Property Address: ___Henderson, Nev  89074___                 SELLER(S) INITIALS: _____

Rev. 6/09                  ©2009 Greater Las Vegas Association of REALTORS®         Page 9 of 11

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Sukhbir Pannu

1 Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of
2 any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing
3 party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorneys fees and costs incurred by
4 such prevailing party.
5
6 **THIS IS A LEGALLY BINDING CONTRACT.** All parties are advised to seek independent legal and tax advice to review
7 the terms of this Agreement.
8
9 **NO REAL ESTATE BROKER/AGENT MAY SIGN FOR A PARTY TO THIS AGREEMENT UNLESS THE**
10 **BROKER OR AGENT HAS A PROPERLY EXECUTED POWER OF ATTORNEY TO DO SO.**
11
12 **THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®**
13 **(GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY**
14 **PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO**
15 **ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN**
16 **APPROPRIATE PROFESSIONAL.**
17
18 This form is available for use by the real estate industry. It is not intended to identify the user as a REALTOR®.
19 REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL
20 ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
21
22 27.  ADDENDUM(S) ATTACHED: _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 28.  ADDITIONAL TERMS: _____
31 _____
32 _____
33 _____
34 _____
35 _____
36 _____
37 _____
38 _____
39 _____
40 _____
41 _____


Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____ Sukhbir Pannu _____ BUYER(S) INITIALS: _____
                      2770 Chokecherry Ave
Property Address: _____ Henderson, Nev   89074 _____ SELLER(S) INITIALS: _____
Rev. 6/09               ©2009 Greater Las Vegas Association of REALTORS®                    Page 10 of 11

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Sukhbir Pannu

## Earnest Money Receipt

BUYER'S AGENT ACKNOWLEDGES RECEIPT FROM BUYER HEREIN of the sum of $ **2,000.00**
evidenced by ☐ Cash, ☐ Cashier's Check, ☐ Personal Check, or ☒ Other **To be wired within 24 hour**
payable to **Title Company** . Upon Acceptance, Earnest Money to be deposited within ONE (1) business
day, with ☒ Escrow Holder, ☐ Buyer's Broker's Trust Account, - OR - ☐ Seller's Broker's Trust Account

Date: **09/17/2010**    Signed: _____    Buyer's Agent.
**Jared Jones/Pauline Aguilara**

## Buyer's Acknowledgement of Offer

Upon Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

_____    **Sukhbir Pannu**    **09/17/2010**    **4**:**00** ☐ AM ☒ PM
Buyer's Signature        Buyer's Printed Name    Date    Time

_____    _____    _____:_____ ☐ AM ☐ PM
Buyer's Signature        Buyer's Printed Name    Date    Time

Seller must respond by: _____ ☐ AM ☐ PM on (month) _____, (day) _____, (year) _____. Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect.

Confirmation of Representation: The Buyer is represented in this transaction by:

Buyer's Broker: **Margo Sarkissian**        Agent's Name: **Jared Jones/Pauline Aguilara**
Company Name: **Horizon Realty Group**       Office Address: **7361 Prairie Falcon #110**
Phone: **(702)499-6439**             Fax: **(702)441-0860**
Email: **home4anv1@aol.com**

## Seller's Response

☐ ACCEPTANCE: Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.
☐ COUNTER OFFER: Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.
☐ REJECTION: In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein is not accepted.

_____    **ARTHUR R. BECK**    **9-21-10**    **7.41** ☐ AM ☒ PM
Seller's Signature        Seller's Printed Name    Date    Time

**Joyce Beck**        **Joyce Beck**    **9-21-10**    **7.41** ☐ AM ☒ PM
Seller's Signature        Seller's Printed Name    Date    Time

Confirmation of Representation: The Seller is represented in this transaction by:

Seller's Broker: **Cheryl Smith**        Agent's Name: **Crystal Lone**
Company Name: **Realty ONE Group, Inc.**      Office Address: **10750 W CHARLESTON BLVD #180**
Phone: **(702)301-2826**             Fax: **702-224-2176**    **LAS VEGAS NV**
Email: **LONETEAM@GMAIL.COM**               **89135**

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: _____**Sukhbir Pannu**_____    BUYER(S) INITIALS: _____

Property Address: ____**2770 Chokecherry Ave**____                SELLER(S) INITIALS: _____
**Henderson, Nev 89074**

Rev. 6/09        ©2009 Greater Las Vegas Association of REALTORS®        Page 11 of 11

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        **Sukhbir Pannu**

ANTHONY J. DELUCA, ESQ.
Nevada Bar No.: 006952
DELUCA & ASSOCIATES
5830 West Flamingo Road, Suite 233
Las Vegas, Nevada 89103
(702) 873-5386
Fax (702) 873-5903
anthony@deluca-associates.com

## IN THE UNITED STATES BANKRUPTCY COURT
### District of Nevada

| | |
|---|---|
| **In Re**: | Case No. 10-10469-BAM |
| | Trustee: Kathleen Leavitt |
| Arthur R Beck, Jr. | |
| Joyce Hand-Beck | Chapter:13 |
| **Debtor(s)** | Hearing Date: 12/02/2010 |
| | Hearing Time: 2:30 pm |

## ORDER GRANTING MOTION ALLOWING DEBTORS TO SHORT-SELL REAL PROPERTY

This Court, having considered the Debtor's Motion Allowing Debtors to Short-Sell Real

Property, and good cause appearing,

IT IS HEREBY ORDERED that the Motion Allowing Debtors to Short-Sell Real Property

be GRANTED.

///

IT IS SO ORDERED.

Submitted by:                                          APPROVED/DISAPPROVED

/s/ ANTHONY J DELUCA
_____                    by: _____
ANTHONY J. DELUCA, ESQ.
5830 West Flamingo Road, Suite 233
Las Vegas, Nevada 89103                          Kathleen Leavitt
Attorney for Debtor's                                Trustee


APPROVED/DISAPPROVED


by: _____

Attorney for Creditor



In accordance with LR 9021, counsel submitting this document certifies as that the order accurately reflects the court's ruling and that (check one):

____ The court has waived the requirement of approval under LR 9021(b)(1).

____ No party appeared at the hearing or filed an objection to the motion.

____ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Party                                    Approved       Dissapproved        Failed to respond

____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###